OWNERS INSURANCE COMPANY, )
)
          Plaintiff, )
)
          v. )          **ORDER**
)
MM SHIVAH LLC, et al., )
)
          Defendants. )

On January 21, 2020, Owners Insurance Company ("Owners" or "plaintiff") filed a complaint against defendants MM Shivah LLC ("MM Shiva"), Manojkumar Gandhi ("Manoj"), Mona Gandhi ("Mona"), MM Vaibhavlaxmi, LLC, CI Hotels LLC, WS Hotels LLC, and Choice Hotels International, Inc. ("Choice") (collectively "defendants") seeking a declaratory judgment that Owners is not required to defend the defendants in an underlying state court action. In that underlying state court action, Tammy Lowrey ("Lowrey") seeks relief for Manoj's alleged sexual harassment and sexual assault of Lowrey and the defendants' alleged ratification of Manoj's conduct. See [D.E. 1, 1-1]. Specifically, Lowrey seeks relief from the defendants in the underlying state court action for (1) wrongful discharge from employment in violation of North Carolina public policy; (2) intentional infliction of emotional distress; and (3) battery. See Lowrey Compl. [D.E. 1-1].

On March 19, 2020, MM Shivah, Manoj, Mona, MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC answered Owners's complaint and filed a counterclaim seeking a declaratory judgment that Owners has to defend them [D.E. 13]. On March 31, 2020, Choice answered Owners's complaint [D.E. 25]. On March 5, 2021, Choice moved for summary judgment [D.E. 50]

and filed a memorandum and documents in support [D.E. 51, 52]. That same day, MM Shivah moved for partial summary judgment [D.E. 53] and filed a memorandum and documents in support [D.E. 54, 55]. On March 5, 2021, Owners also moved for summary judgment [D.E. 56] and filed a memorandum and documents in support [D.E. 57, 58, 59]. On March 26, 2021, MM Shivah, Manoj, Mona, MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC responded in opposition to Owners's motion for summary judgment [D.E. 60]. Also on March 26, 2021, Choice responded in opposition to Owners's motion for summary judgment [D.E. 63]. That same day, Owners responded in opposition to Choice and MM Shivah's motions for summary judgment [D.E. 65, 66]. On April 9, 2021, all parties replied to the responses [D.E. 69, 70, 71].

As explained below, the court grants Choice's motion for summary judgment, grants MM Shivah's motion for partial summary judgment, grants in part Owners's motion for summary judgment as to MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC, and denies in part Owners's motion for summary judgment as to Choice, MM Shivah, Mona, and Manoj. Thus, Owners must defend Choice, MM Shivah, Mona, and Manoj.

I.

MM Shivah is a limited liability company registered and doing business in North Carolina. See Compl. [D.E. 1] ¶ 3; [D.E. 13] ¶ 3; [D.E. 25] ¶ 3. Manoj and Mona Gandhi are married and operate MM Shivah, which does business as the Comfort Inn Garner. See Compl. ¶¶ 4–5; [D.E. 13] ¶¶ 4–5. The Comfort Inn Garner operates as a franchise of Choice, which granted MM Shivah a license to use the Comfort Inn name and brand pursuant to the Franchise Agreement. See Franchise Agreement [D.E. 1-2].

The Franchise Agreement requires MM Shivah to carry certain insurance coverage and to list

2

Choice as an additional insured on those insurance policies. See Franchise Agreement.[1] In 2014, MM Shivah purchased its insurance policy (the "Shivah Policy" or "Policy") from Owners, a Michigan insurance company, and renewed the policy through at least 2019. See [D.E. 1-3, 1-4, 1-5, 1-6]; Compl. ¶ 2.

On July 17, 2019, in Durham County Superior Court, Lowrey sued the defendants, alleging three state law tort claims arising out of Manoj's alleged sexual assaults and sexual harassment of Lowrey. See Lowrey Compl. Owners seeks a declaratory judgment that it does not have a duty to defend the defendants in the underlying state court action ("Lowrey action" or "underlying action"). See Compl. All the defendants but Choice counterclaim for a declaratory judgment that Owners

---

[1] The Franchise Agreement provides that "[b]eginning no later than the Opening Date and for the rest of the Term," MM Shivah "must purchase and maintain, at your expense, the type and amounts of insurance coverage listed in this Section 12 (b)." Franchise Agreement at 13. The required policies include, inter alia:

> Commercial Automobile and Commercial General Liability Insurance policies written on an occurrence form protecting you and the Additional Insureds (as defined in Section 12(c)) from and against all manner of liability. The coverage described in the preceding sentence is primary to any coverage that we maintain and includes Contractual, Products and Completed Operations, Independent Contractors, Personal Injury, Property Damage, Bodily Injury and Host Liquor Liability coverage (if applicable), together with the costs and expenses of the defense and/or adjustment of injury or damage, without exception, from or in any way related to any operation or activity conducted under this Agreement and/or of the Hotel, including adjacent areas like parking lots, restaurants, and bars. . . . The policies described in this Section 12(b)(2) must apply to lawsuits or actions brought anywhere in the world. These policies must provide limits per location of not less than $5,000,000 ($10,000,000 if the Hotel has 6 or more stories) per occurrence and must be accompanied by a waiver of subrogation in favor of the Additional Insureds. You may meet the required total minimum limits through a combination of primary and umbrella policies. . . .

Id. The Franchise Agreement also contained an "Additional Insured Requirement," which stated that MM Shivah "must also obtain and attach an endorsement to the policies required in Sections 12(a) and 12(b) adding us, our affiliates and subsidiaries and the officers, directors, agents and employees of us, our affiliates and our subsidiaries as additional insureds ('Additional Insureds')." Id.

3

must defend them. See [D.E. 13] 24–26.

## II.

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists. See Anderson, 477 U.S. at 249.

In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378. Nevertheless, the court is not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." Anderson, 477 U.S. at 251 (quotation omitted). "[C]onclusory statements, without specific evidentiary support," do not create genuine issues of material fact. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998). Only factual disputes that affect the outcome of the case properly preclude summary judgment. See Anderson, 477 U.S. at 247–48.

4

This court has subject-matter jurisdiction based on diversity. See 28 U.S.C. § 1332. Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Because this dispute requires interpreting a North Carolina insurance contract, the court applies North Carolina substantive law. See N.C. Gen. Stat. § 58-3-1; Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000); Collins & Aikman Corp. v. Hartford Accident & Indem. Co., 335 N.C. 91, 94, 436 S.E.2d 243, 245 (1993); see also Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013); Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).

The coverage contracted for in an insurance policy determines the insurer's duty to defend its insured. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 303–07, 524 S.E.2d 558, 564–68 (2000); Mastrom Inc. v. Cont'l Cas. Co., 78 N.C. App. 483, 484, 337 S.E.2d 162, 163 (1985); see also Peerless Ins. Co. v. Strother, 765 F. Supp. 866, 869 (E.D.N.C. 1990). North Carolina law employs the "comparison test," comparing the insurance policy with the allegations in the complaint. See, e.g., Peerless Ins. Co., 765 F. Supp. at 869; Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010). "If the facts, as alleged in the complaint, could support liability under the policy, then a duty to defend arises on the insurer's part." Peerless Ins. Co., 765 F. Supp. at 869. In determining whether a duty to defend exists, a court focuses on the facts pled in the underlying action and not on how the parties characterize the claims. See Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co., 141 N.C. App. 127, 128, 539 S.E.2d 348, 350 (2000); see also State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 255 (4th Cir. 2003). "An insurer's duty to defend arises when the claim against the insured sets forth facts representing a risk covered by the terms of the policy. The duty to defend

5

the duty to indemnify, and may attach even in an action in which no damages are ultimately awarded." Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 124 N.C. App. 232, 242, 477 S.E.2d 59, 66 (1996) (citations omitted), modified on other grounds on reh'g, 127 N.C. App. 729, 493 S.E.2d 658 (1997) (per curiam); see Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691 & n.2, 340 S.E.2d 374, 377 & n.2 (1986); see also Peerless Ins. Co., 765 F. Supp. at 869. "Of course, allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insure[r]." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. The insurer has a duty to defend unless the facts as alleged "are not even arguably covered by the policy." Id. at 692, 340 S.E.2d at 378.

Where the relevant facts are not disputed, construing the policy is an issue of law. See Parker v. State Cap. Life Ins. Co., 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963). "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009) (quotation omitted); see Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting "an insurance policy, the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties." Fulford v. Jenkins, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (quotation omitted); see McDowell Motor Co. v. N.Y. Underwriters Ins. Co., 233 N.C. 251, 254, 63 S.E.2d 538, 540–41 (1951). A court must construe an insurance contract as a reasonable person in the position of the insured would have understood the insurance contract. See

6

Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004); Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975); Trophy Tracks, Inc., 195 N.C. App. at 738, 673 S.E.2d at 790.

The insurance company selected the words in the insurance policy, and a court must resolve "any ambiguity or uncertainty as to their meaning . . . in favor of the policyholder, or the beneficiary, and against the company." Wachovia Bank & Tr. Co., 276 N.C. at 354, 172 S.E.2d at 522; see Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967); Mills v. State Life & Health Ins. Co., 261 N.C. 546, 552–53, 135 S.E.2d 586, 590 (1964); Jones v. Pa. Cas. Co., 140 N.C. 262, 264, 52 S.E. 578, 579 (1905). As the Supreme Court of North Carolina once explained: "When an insurance company, in drafting its policy of insurance, uses a 'slippery' word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound." Grant v. Emmco Ins. Co., 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978) (quotation omitted); see Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 437, 146 S.E.2d 410, 416 (1966); Cowell v. Gaston Cnty., 190 N.C. App. 743, 746, 660 S.E.2d 915, 918 (2008).

Where a policy defines a term, that definition controls. See Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505–06, 246 S.E.2d 773, 777 (1978). Where a policy does not define a term, a court gives "nontechnical words

7

. . . their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Woods, 295 N.C. at 506, 246 S.E.2d at 777; see Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); Grant, 295 N.C. at 42, 243 S.E.2d at 897. Moreover, courts give a term in an insurance policy the same meaning throughout the various coverages unless the policy clearly expresses an intent to give different meanings to the term within the different coverages in the same policy. See Grant, 295 N.C. at 54, 243 S.E.2d at 904; Fieldcrest Cannon, Inc., 124 N.C. App. at 244, 477 S.E.2d at 67.

The Supreme Court of North Carolina has discussed the meaning of certain commonly used and commonly undefined terms in insurance policies. For example, the Supreme Court of North Carolina "has defined 'accident' as 'an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty.'" Waste Mgmt. of Carolinas, Inc., 315 N.C. at 694, 340 S.E.2d at 379 (quotation omitted); see Tayloe v. Hartford Accident & Indem. Co., 257 N.C. 626, 627, 127 S.E.2d 238, 239–40 (1962); Thomas v. Lawrence, 189 N.C. 521, 127 S.E. 585, 586 (1925); Crutchfield v. Richmond & Danville R.R., 76 N.C. 320, 322 (1877). The Supreme Court of North Carolina also has discussed the meaning of "arising out of" in the context of an additional insured endorsement. Interpreting that phrase in accord with its ordinary meaning, the court held that "[i]f used to extend, rather than exclude, coverage, our courts have broadly construed the phrase 'arising out of' to require a simple 'causal nexus' and not causation rising to the level of proximate cause." Pulte Home Corp. v. Am. S. Ins. Co., 185 N.C. App. 162, 167–68, 647 S.E.2d 614, 617–18 (2007) (citation omitted); see State Cap.

8

Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 538–40, 350 S.E.2d 66, 68–69 (1986); City of Greenville v. Haywood, 130 N.C. App. 271, 276–77, 502 S.E.2d 430, 434 (1998); see also Affinity Living Grp., LLC v. StarStone Specialty Ins. Co., 959 F.3d 634, 641 (4th Cir. 2020) ("North Carolina courts interpret 'arising out of' broadly to include only a causal connection when used in a provision extending coverage but interpret the phrase more narrowly to require proximate causation when used in a provision excluding coverage.").

The insured bears the burden to prove coverage. See Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326, 328, 150 S.E.2d 496, 497 (1966); N.C. Farm Bureau Mut. Ins. Co. v. Sadler, 365 N.C. 178, 182, 711 S.E.2d 114, 116–17 (2011); Metric Constructors, Inc. v. Indus. Risk Insurers, 102 N.C. App. 59, 61–62, 401 S.E.2d 126, 128, aff'd, 330 N.C. 439, 410 S.E.2d 392 (1991) (per curiam). "If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." McAbee, 268 N.C. at 328, 150 S.E.2d at 497.

Where there is a "separation of insureds" provision, a court must apply each exclusion separately with respect to each insured. See, e.g., Universal Ins. Co. v. Burton Farm Dev. Co., LLC, 216 N.C. App. 469, 476, 718 S.E.2d 665, 670 (2011). Exclusions are not favored, and courts strictly construe exclusions against the insurer within the reasonable interpretation of the policy language. See Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967); Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co., 145 N.C. App. 278, 281, 550 S.E.2d 271, 273 (2001). "[E]xclusions from coverage are construed strictly so as to provide coverage which would otherwise be afforded by the policy." Marriott Fin. Servs., Inc., 288 N.C. at 144, 217 S.E.2d at 565; see Wachovia Bank & Tr. Co., 276 N.C. at 355, 172 S.E.2d at 522–23; Allstate Ins. Co., 269 N.C. at 347, 152 S.E.2d at 440.

9

Where policies use ambiguous or confusing language, or contain terms that would create a coverage so restricted or discretionary on the part of the insurer that "it is unclear how the contracting parties could have had any meaningful meeting of the minds," North Carolina appellate courts have found coverage for the insured. Cowell, 190 N.C. App. at 748–49, 660 S.E.2d at 919–20 ("Defendant's interpretation of the endorsement would leave Zurich with broad discretion in deciding what professional services could be denied coverage, and leave the insured unable to discern the limits of its coverage. Using this interpretation, it is unclear how the contracting parties could have had any meaningful meeting of the minds as to what services were and were not excluded. We hold that the word 'you' in this context constitutes a 'slippery' word . . . [and] must be construed against Zurich, and thus allow coverage for defendant's building inspectors' acts." (citations omitted)); see Grant, 295 N.C. at 43, 243 S.E.2d at 897; Fulford, 195 N.C. App. at 407, 672 S.E.2d at 762 (interpreting insurance contract to give effect to additional coverage purchased where interpretation of coverage in pari materia would violate rules of contract interpretation by giving no effect to the additional coverage); Pulte Home Corp., 185 N.C. App. at 168–69, 647 S.E.2d at 618–19 (resisting a "cramped reading" of coverage that would result in coverage in only an extremely narrow set of circumstances and would provide "no genuine insurance" as irreconcilable with North Carolina's "policy of construing ambiguous insurance policies in favor of the insured and in a manner that provides coverage").

## III.

Before addressing the parties' dispute, the court notes the parties' common ground. The parties, except Choice, agree that the date of the allegations in Lowrey's underlying action range from 2015 through 2019. See Compl. ¶¶ 19–20; [D.E. 13] ¶¶ 19–20; [D.E. 25] ¶¶ 19–20. All parties agree MM Shivah's coverage under the Shivah Policy was in place during that period. See [D.E. 51]

**10**

¶ 5; [D.E. 54] 12; [D.E. 57] 2. The parties also agree that the insurance policies attached to the complaint are accurate.[2] See Compl. ¶¶ 26–27;[3] [D.E. 13] ¶ 28; [D.E. 25] ¶ 27; [D.E. 55] 6 n.1. Finally, the parties agree that the alleged tortious conduct in the Lowrey underlying action occurred in the coverage area.

## A.

The court first addresses MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC. MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC are limited liability companies that are defendants in Lowrey's underlying action. See Lowrey Compl. [D.E. 1-1]. Lowrey alleges Mona and Manoj wholly own these LLCs and that these LLCs operate under an exclusive licensing agreement with Choice. See id. ¶¶ 9–11. Owners seeks a declaratory judgment that it need not defend MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC. See Compl. ¶ 1. On March 19, 2020, MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC counterclaimed for a declaratory judgment that Owners must defend them. See [D.E. 13] 24–26.

MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC are not named insureds under the policy. See Shivah Policy at 8; [D.E. 59-1] ¶ 2; [D.E. 59-2] ¶¶ 9–10. In fact, MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC admit that they are not and have never been members or managers of MM Shivah. See [D.E. 59-1] ¶¶ 3–4; [D.E. 59-2] ¶¶ 11–14. Moreover, MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC do not contest that Owners need not

---

[2] Owners filed copies of the policy, as renewed annually, with the complaint. See [D.E. 1-3] (2014–2015 Policy); [D.E. 1-4] (2016–2017 Policy); Shivah Policy [D.E. 1-5] (2017–2018 Policy); [D.E. 1-6] (2018–2019 Policy). The court quotes from the 2017–2018 policy renewal that contains the Commercial General Liability Plus Endorsement. See Shivah Policy [D.E. 1-5].

[3] The complaint contains four paragraph 27s, each asserting that a true and accurate copy of the insurance policy for each relevant year is attached to the complaint. See Compl. at 6–7.

Case 5:20-cv-00021-D   Document 74   Filed 03/04/22   Page 11 of 24

defend them under the Shivah Policy and do not oppose Owners's motion for summary judgment as to them. See [D.E. 60] 21. Accordingly, the court grants Owners's motion for summary judgment as to MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC.

## B.

As for MM Shivah, MM Shivah is the named insured under the Policy. See Shivah Policy at 8. Owners must defend MM Shivah in Lowrey's underlying action unless the exclusions under the Policy excuse Owners from defending MM Shivah.

First, Owners argues that Manoj's tortious conduct and MM Shivah's subsequent actions do not constitute an "occurrence" within the meaning of the Policy, thereby excluding coverage under Coverage A. See [D.E. 57] 14. Coverage A applies to bodily injuries but only where the bodily injury "is caused by an 'occurrence' that takes place in the 'coverage territory.'" Shivah Policy at 111. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 126. As mentioned, the Supreme Court of North Carolina "has defined 'accident' as 'an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty.'" Waste Mgmt. of Carolinas, Inc., 315 N.C. at 694, 340 S.E.2d at 379 (quotation omitted) (construing the term "accident" within a definition of "occurrence" that is substantially the same as the definition in the Shivah Policy); see Tayloe, 257 N.C. at 627, 127 S.E.2d at 239–40; Thomas, 189 N.C. 521, 127 S.E. at 586; Crutchfield, 76 N.C. at 322. Owners and MM Shivah dispute whether Manoj's alleged sexual harassment and sexual assaults of Lowrey can be considered unexpected or unforseen from MM Shivah's position. See [D.E. 57] 14; [D.E. 60] 13; [D.E. 71]

12

5–6. The court need not resolve this dispute, however, because MM Shivah is entitled to a defense under Coverage B.

The Policy has an employment-related practices exclusion under both Coverage A and Coverage B. See Shivah Policy at 116, 118. These identical employment-related practices exclusions provide that the insurance does not apply to bodily injury or personal or advertising injury to any person "[a]rising out of any: . . . (b) [t]ermination of a person's employment; (c) [e]mployment-related practice, policy, act or omission, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a person." Id. The exclusions apply "[w]hether the insured may be liable as an employer or in any other capacity" and "[w]hether the offense is alleged to arise out of the employment during the course or scope of employment, outside the course or scope of employment or after termination of employment." Id.

Lowrey's allegations against MM Shivah arise out of Manoj's alleged sexual harassment and sexual assaults and related employment actions, MM Shivah's alleged ratification of that conduct, and MM Shivah's own negligence. See Lowrey Compl. Therefore, this provision appears to preclude coverage for Lowrey's claims that would fall under Coverage A.

Coverage B includes an identical employment-related practices exclusion, but the personal-injury extension in the "personal liability plus" endorsement alters the coverage. See Shivah Policy at 105, 118. The personal-injury extension changes the definition of personal injury under Coverage B to include, inter alia, "other than 'bodily injury', arising out of one or more of the following . . . f. Discrimination, humiliation, sexual harassment, and any violation of civil rights caused by such discrimination, humiliation, or sexual harassment." Id. at 105. The personal-injury extension and

13

the employment-related practices exclusion conflict. See Owners Ins. Co. v. Hagen, No. 14-CV-1017-MJR-DGW, 2015 WL 11539509, at *2–3 (S.D. Ill. Oct. 27, 2015) (unpublished) (construing identical policy language). Moreover, where strict interpretation of the terms of the conflicting contract terms would lead to uncertain or useless coverage, North Carolina appellate courts have construed the contract against the insurance company and in favor of coverage. See, e.g., Fulford, 195 N.C. App. at 407, 672 S.E.2d at 762; Cowell, 190 N.C. App. at 748–49, 660 S.E.2d at 919–20; Pulte Home Corp., 185 N.C. App. at 168–69, 647 S.E.2d at 618–19. Thus, the harassment language in the employment-related practices exclusion does not apply to Coverage B because it conflicts with the personal-injury extension that MM Shivah purchased. See, e.g., Hagen, 2015 WL 11539509, at *2–3.

Alternatively, Owners argues that the "knowing violation of the rights of another" exclusion precludes coverage under Coverage B. See [D.E. 57] 10–11, 14. This exclusion states that the insurance does not apply to personal injury or advertising injury "[c]aused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury' or 'advertising injury.'" Shivah Policy at 117. According to Owners, Lowrey alleges that Manoj knowingly violated her rights by sexually harassing and sexually assaulting her and continued the sexual harassment and sexual assaults after she told Manoj that she objected to his conduct. See, e.g., Lowrey Compl. ¶¶ 27–28, 33; cf. Russ v. Great Am. Ins. Cos., 121 N.C. App. 185, 189, 464 S.E.2d 723, 725–26 (1995) (concluding that because sexual harassment "is substantially certain to cause injury to the person harassed, intent to injure may be inferred as a matter of law from the intent to act for the purpose of determining coverage under an insurance policy").

14

The "knowing violation of the rights of another" exclusion from Coverage B has the same conflict as the employment-related practices exclusion. Cf. Hagen, 2015 WL 11539509, at *2–3. The personal-injury extension specifically includes sexual harassment, which is a knowing violation of another's rights under North Carolina law. See Shivah Policy at 105; see Russ, 121 N.C. App. at 189, 464 S.E.2d at 725–26. This conflict "leave[s] the insured unable to discern the limits of its coverage." Cowell, 190 N.C. App. at 748, 660 S.E.2d at 919; see Hagen, 2015 WL 11539509, at *2–3; cf. Haywood, 130 N.C. App. at 278, 502 S.E.2d at 435 ("[P]rovisions allowing coverage for an assault and battery, but excluding coverage for willful violation of a penal statute are in conflict as to make it virtually impossible for either an insured or a beneficiary to determine precisely which perils are covered and which are not." (quotations omitted)) (collecting cases). Therefore, under North Carolina law, MM Shivah is covered under Coverage B in the Lowrey action, and Owners must defend MM Shivah in the Lowrey action. Accordingly, the court grants MM Shivah's motion for partial summary judgment and denies Owners's motion for summary judgment as to MM Shivah.

## C.

As for Owners's duty to defend Manoj, Owners argues that Manoj is not an insured for the purposes of the Lowrey action. Alternatively, Owners argues that even if Manoj is an insured, various policy exclusions exclude coverage. See [D.E. 57] 7–11. Manoj disagrees. See [D.E. 60] 11–21.

Under the Policy as modified by the employer's liability exclusion, MM Shivah is the named insured and its members are "insureds, but only with respect to the conduct of [MM Shivah's] business." Shivah Policy at 131. Owners argues that Lowrey did not allege in the underlying action that Mona and Manoj were members of MM Shivah and that Mona and Manoj have not presented evidence that they are members, rather than managers, of MM Shivah. See [D.E. 57] 8; [D.E. 71]

15

7. Owners also argues that Mona and Manoj are managers and not members of MM Shivah and are therefore excluded under the Commercial General Liability Plus endorsement. See [D.E. 71] 7. Manoj responds that Lowrey's use of "principals" in the underlying action covers the fact that Manoj and Mona are members of MM Shivah. [D.E. 13] ¶ 92 (stating that "Lowrey alleges Manoj and Mona are principals in Shivah – principals of a corporation are shareholders and principals of a limited liability company are members"). Manoj also argues that Lowrey's characterization of Mona and Manoj as owners or principals does not control and that Mona and Manoj are members of MM Shivah and are therefore insureds under the Policy. See [D.E. 60] 16 ("While the duty to defend against certain claims turns on whether the events as alleged are covered or excluded, the duty to defend an insured turns on the designation of 'insured' in the Declaration." (emphasis omitted)).

Under the employer's liability exclusion, managers and employees of MM Shivah are not insureds. Compare Shivah Policy at 120 (including limited liability company managers as "insureds, but only with respect to their duties as your managers"), with id. at 131 (employer's liability exclusion with no coverage for managers). Members of MM Shivah are "insureds, but only with respect to the conduct of [MM Shivah's] business." Id. at 131. The Policy does not define member or manager. See id. at 126.

Owners emphasizes the distinction between members and managers. Although the policy language is clear, Owners's proposed distinction is not. Under North Carolina law, the management of a limited liability company is vested in the managers. See N.C. Gen. Stat. § 57D-3-20(a). Moreover, unless the articles of incorporation provide otherwise, all members are managers by virtue of their status as members, though nonmembers also can be managers. See id. § 57D-3-20(d). Therefore, the allegation that Mona and Manoj are managers of MM Shivah does not preclude their

16

status as members. Here, the policy language is "slippery" because the policy includes members but excludes managers. Cf. Grant, 295 N.C. at 43, 243 S.E.2d at 897. At bottom, if Mona and Manoj are members as well as managers of MM Shivah, they are insureds if Lowrey alleged liability "with respect to the conduct of [MM Shivah's] business." Shivah Policy at 131.

The only support Owners has provided to show that Mona and Manoj are not members of MM Shivah is Lowrey's use of the terms "owners" and "principals" rather than "members" in her complaint. See [D.E. 57] 8; [D.E. 71] 7. On this record and in light of governing North Carolina law, Manoj is a member.

Alternatively, Owners argues that even if Manoj is a member, he is not entitled to indemnity or a defense under the Policy because "sexual harassment, sexual assault, and battery are not [MM Shivah's] business." [D.E. 57] 9. In support, Owners cites North Carolina cases holding that sexual assault is not within an employee's scope of employment. See Medlin v. Bass, 327 N.C. 587, 594, 398 S.E.2d 460, 464 (1990) (holding that a principal's sexual assault of a student was not conduct within the scope of the principal's employment); Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 109 N.C. App. 152, 157–58, 426 S.E.2d 451, 454 (1993) (holding that carrier had no duty to defend school employee for sexual assault of a student because the school employee was not acting within the scope of employment during the sexual assault).

No legal business is in the business of sexual harassment, sexual assault, or battery. However, the relevant question is not whether MM Shivah is in the business of sexual harassment, sexual assault, or battery. Rather, the relevant question is whether the factual allegations against Manoj in Lowrey's underlying action allege liability for Manoj as a member of MM Shivah with respect to the conduct of MM Shivah's business.

17

MM Shivah's members are "insureds, but only with respect to the conduct of [MM Shivah's] business." Shivah Policy at 131. Manoj's alleged sexual harassment and sexual assaults are not within the scope of his employment. See, e.g., Medlin, 327 N.C. at 594, 398 S.E.2d at 464; Durham City Bd. of Educ., 109 N.C. App. at 157–58, 426 S.E.2d at 454. North Carolina appellate courts, however, interpret clauses expanding coverage broadly. See Affinity Living Grp., 959 F.3d at 641–42; State Cap. Ins. Co., 318 N.C. at 538–40, 350 S.E.2d at 68–69; Pulte Home Corp., 185 N.C. App. at 167–68, 647 S.E.2d at 617–18; Haywood, 130 N.C. App. at 276–77, 502 S.E.2d at 434. Moreover, North Carolina appellate courts consistently have interpreted language like "arising out of" and "in connection with" more broadly than scope of employment language. See, e.g., Affinity Living Grp., 959 F.3d at 641 ("North Carolina courts interpret 'arising out of' broadly to include only a causal connection when used in a provision extending coverage . . . ." (emphasis omitted)); Nationwide Mut. Fire Ins. Co. v. Grady, 130 N.C. App. 292, 297, 502 S.E.2d 648, 652 (1998) (determining that "the phrase 'in connection with,' . . . has a 'much broader meaning' than the phrase 'arising out of'"); Nationwide Mut. Fire Ins. Co. v. Nunn, 114 N.C. App. 604, 607–09, 442 S.E.2d 340, 343–44 (1994).

The Supreme Court of North Carolina would likely analyze whether Manoj's alleged conduct could conceivably advance a business purpose of MM Shivah. For example, in Medlin, the North Carolina Supreme Court concluded that a principal's sexual assault of a student "could advance no conceivable purpose of the" county board of education. Medlin, 327 N.C. at 594, 398 S.E.2d at 464 (emphasis added); see Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 282, 708 S.E.2d 138, 147 (2011) (interpreting Medlin similarly). In Kubit, the North Carolina Court of Appeals, applying the same test on different facts, concluded that the defendant-anesthesiologists' alleged tortious conduct directed at a surgeon "could conceivably advance a purpose" of the medical practice, and thus the

18

anesthesiologists were insureds. Kubit, 210 N.C. App. at 282, 708 S.E.2d at 147 (emphasis added).
Kubit distinguished Medlin and Durham City Board of Education as cases where the employees
"were acting to advance purely personal objectives" instead of objectives that conceivably advanced
a business purpose. Id. at 282–83, 708 S.E.2d at 147. Thus, this court examines whether Manoj's
actions, as alleged in Lowrey's complaint, could conceivably advance a business purpose of the
hotel.

The Policy requires that Manoj's alleged conduct be "with respect to the conduct" of the
business. Shivah Policy at 131. Lowrey alleges that Manoj sexually assaulted and sexually harassed
her while supervising her at the hotel. See Lowrey Compl. ¶¶ 16–55. As in Medlin, Manoj's alleged
tortious behavior advanced purely personal objectives. As in Kubit, however, Lowrey's allegations
about Manoj (and the other defendants) include more than simply the alleged tortious behavior. See
id. ¶¶ 16–33, 38–39, 47, 55–58. Manoj's alleged tortious conduct, viewed in the context of his
employer-employee relationship with Lowrey and the alleged conduct of the other defendants, could
conceivably advance a business purpose of the hotel. See id. at ¶¶ 18–19, 24–27.[4] Put differently,
Lowrey's allegations reveal a causal nexus between Manoj's supervising role as an employer at the
hotel and his alleged tortious behavior directed at Lowrey, an employee. See Kubit, 210 N.C. App.
at 282–83, 708 S.E.2d at 147; Haywood, 130 N.C. App. at 277–78, 502 S.E.2d at 434 (holding that
the phrase "arising out of" does not require the action to be in furtherance of the business; "it only
requires a causal nexus"; therefore, a sexual assault committed by an officer who was performing

---

[4] For example, Lowery alleges that Manoj directed her to check the heater in one of the rooms
(Lowrey Compl. ¶¶ 18–20), showed her something on the computer (id. at ¶ 24), and directed her
to remove a mouse trap from a room that the hotel wanted to rent. Id. at ¶¶ 25–27. Lowrey's
allegations suggest Manoj directed Lowrey's activities as an employee, which furthered the hotel's
business, but in ways that created opportunities for Manoj to commit the alleged tortious misconduct.
Lowery also makes relevant allegations about the other defendants. See id. ¶¶ at 38–39, 47, 55–58.

19

his duties as a police officer and took advantage of his position as an officer to accomplish his own ends (the assault) arose out of the officer's employment); cf. Young v. Great Am. Ins. Co. of N.Y., 359 N.C. 58, 602 S.E.2d 673, 674 (2004) (per curiam), adopting the reasoning of the dissenting opinion in 162 N.C. App. 87, 92, 590 S.E.2d 4, 7–8 (Hunter, J., dissenting) (distinguishing "while performing law enforcement duties" in Young where no duty to defend arose from "arising out of the [insured's] law enforcement duties" in Haywood where a duty to defend arose).

The coverage question in this case is close. North Carolina law, however, resolves close coverage questions in favor of the insured. Indeed, "pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. And a court must resolve "any ambiguity or uncertainty as to [a policy's] meaning . . . in favor of the policyholder, or the beneficiary, and against the company." Wachovia Bank & Tr. Co., 276 N.C. at 354, 172 S.E.2d at 522. In light of these principles, the insurer must defend its insured unless the facts as alleged "are not even arguably covered by the policy." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 692, 340 S.E.2d at 378. The court concludes that Lowrey's complaint discloses the possibility that Manoj is liable, that the Policy covers Manoj's potential liability, and that the court must resolve any ambiguity in favor of coverage. Thus, the court concludes that Manoj is an "insured" under the Policy with respect to Lowrey's underlying action.

Alternatively, Owners argues that even if Manoj is an insured with respect to Lowrey's underlying action, the "expected or intended injury" exclusion to Coverage A and the "knowing violation of the rights of another" exclusion to Coverage B bar coverage for Manoj. See [D.E. 57]

20

9–11.[5] Manoj responds that based on Lowrey's allegations about his conduct, the exclusions do not apply. See [D.E. 60] 11–15.

Owners and Manoj agree that Lowrey's alleged injuries qualify as bodily injuries or personal injuries under Coverage A and Coverage B. See [D.E. 57] 10; cf. [D.E. 60] 7–9. After all, in the underlying action, Lowrey alleges sexual assault, battery, and intentional infliction of emotional distress resulting in severe mental and emotional distress, depression, anxiety, permanent injury, medical expenses, loss of enjoyment of life, and a physical violation of her body. See Lowrey Compl. ¶¶ 46, 52–53.

Owners argues that Manoj's alleged sexual assault, sexual harassment, and battery were knowing violations of Lowrey's rights and that Manoj intended to injure Lowrey. In support, Owners cites North Carolina cases holding that because sexual harassment "is substantially certain to cause injury to the person harassed, intent to injure may be inferred as a matter of law from the intent to act for the purpose of determining coverage under an insurance policy." Russ, 121 N.C. App. at 189, 464 S.E.2d at 725; see [D.E. 57] 10. Moreover, to the extent that Lowrey's allegations are under bodily injuries under Coverage A, Owners argues that the "expected or intended injury" exclusion excludes coverage. See [D.E. 57] 10; see also Shivah Policy at 112 ("expected or intended injury" exclusion from Coverage A). Furthermore, Owners argues that under North Carolina law, acts of sexual harassment are not "accidents" as a matter of law and, therefore, are not bodily injuries

---

[5] Owners also argues that "[t]he applicable policies of insurance also include the 'Employment-Related Practices' exclusion and 'Personal Injury and Advertising Injury' exclusion which bar coverage." [D.E. 57] 10 n.3; see id. at 11 n.4 (making a similarly conclusory statement that the employment-related practices exclusion under Coverage B bars coverage). Because the court rejects Owners's arguments about the employment-related practices exclusion in Coverage B, and the "personal and advertising injury" exclusion applies only to Coverage A, the court rejects Owners's arguments.

21

caused by an "occurrence." See [D.E. 57] 10; Russ, 121 N.C. App. at 189, 464 S.E.2d at 725–26; N.C. Farm Bureau Mut. Ins. Co., Inc. v. Phillips, 255 N.C. App. 758, 765–66, 805 S.E.2d 362, 365–67 (2017).

As discussed, a conflict exists between the definition of personal injury under the personal-injury extension and the "knowing violation of the rights of another" exclusion. Therefore, the harassment language in the "knowing violation of the rights of another" exclusion does not apply to Coverage B where it conflicts with the personal-injury extension that MM Shivah purchased. See Hagen, 2015 WL 11539509, at *2–3. Accordingly, the court denies Owners's motion for summary judgment as to Manoj and concludes that Owners must defend Manoj. See id.

### D.

Next, the court addresses Owners's duty to defend Mona. Owners makes the same arguments that it made concerning Manoj. See [D.E. 57] 11–12. For the reasons discussed as to Manoj, Mona is entitled to a defense. See Hagen, 2015 WL 11539509, at *2–3.

Alternatively, Owners argues that even if Mona is a member, she is not an insured under the Policy because members of MM Shivah are insureds only "with respect to the conduct of [MM Shivah's] business." Shivah Policy at 131; see [D.E. 57] 12. MM Shivah is in the hotel business. Lowrey alleges that Mona failed to protect Lowrey from Manoj's sexual assaults and sexual harassment in the workplace, failed to properly investigate or report the misconduct, condoned, enabled, and ratified Manoj's sexual assaults and sexual harassment, and retaliated against Lowrey because Lowrey reported and complained about Manoj's sexual assaults and sexual harassment. See Lowrey Compl. ¶¶ 29–31, 39, 55.

Mona's alleged personnel and management decisions at the Comfort Inn concerning Lowrey

22

and Manoj were actions with respect to the conduct of MM Shivah's business. Therefore, as a member, Mona is an insured. See, e.g., Kubit, 210 N.C. App. at 282–83, 708 S.E.2d at 147; Haywood, 130 N.C. App. at 277–78, 502 S.E.2d at 434. And, for the same reasons as to Manoj, the Policy exclusions do not exclude coverage under Coverage B. Accordingly, the court denies Owners's motion for summary judgment as to the duty to defend Mona and concludes that Owners must defend Mona.

E.

Finally, the court addresses Owners's duty to defend Choice. Owners argues that it need not defend Choice because Choice is only insured "with respect to Choice Hotel's liability as grantor of a franchise" and that Lowrey's allegations do not premise Choice's liability on Choice's grant of the franchise. [D.E. 57] 15–16 (emphasis omitted). Alternatively, Owners argues that even if Choice is an insured for the purposes of Lowrey's allegations, the contractual-liability exclusion excludes coverage. See id. Choice responds that its alleged liability in the Lowrey action stems from its role as franchisor. See [D.E. 63].

Under the "additional insureds" endorsement, Choice is an insured, "but only with respect to [its] liability as grantor of a franchise to you." Shivah Policy at 14. Lowrey alleges that Choice is liable in the underlying action because it failed to revoke MM Shivah's franchise after Lowrey informed Choice about Manoj's alleged misconduct. See Lowrey Compl. ¶ 56. Lowrey also alleges that because Manoj allegedly had a history of sexual assault predating the franchise agreement, Choice negligently entered into the franchise agreement with MM Shivah. Lowery also contends that Choice allegedly failed to create an appropriate reporting system for sexual misconduct complaints. See id. ¶ 57.

As discussed, North Carolina appellate courts interpret clauses granting coverage broadly.

23

See State Cap. Ins. Co., 318 N.C. at 538–40, 350 S.E.2d at 68–69; Pulte Home Corp., 185 N.C. App. at 167–68, 647 S.E.2d at 617–18; Haywood, 130 N.C.App. at 276–77, 502 S.E.2d at 434. And, as discussed, North Carolina appellate courts consistently have interpreted language like "arising out of" and "in connection with" much more broadly than scope of employment language. See, e.g., Affinity Living Grp., 959 F.3d at 641; Grady, 130 N.C. App. at 297, 502 S.E.2d at 652; Nunn, 114 N.C.App. at 607–09, 442 S.E.2d at 343–44.

Lowrey's allegations encompass liability "with respect to [Choice's] liability as grantor of a franchise." Shivah Policy at 14. Even if they do not, Lowrey specifically alleges that Choice is liable for negligence in granting the franchise because of Manoj's alleged history of sexual misconduct. Lowrey Compl. ¶ 57. Therefore, Choice is an insured for at least some of the allegations and is entitled to a defense. Accordingly, the court grants Choice's motion for summary judgment and denies Owners's motion for summary judgment as to Choice.

## IV.

In sum, the court GRANTS IN PART Owners's motion for summary judgment as to MM Vaibhavlaxmi, LLC, CI Hotels LLC, and WS Hotels LLC [D.E. 56], DENIES IN PART Owners's motion for summary judgment as to MM Shivah, Manoj, Mona, and Choice [D.E. 56], GRANTS MM's Shivah's motion for partial summary judgment [D.E. 53], and GRANTS Choice's motion for summary judgment [D.E. 50]. Accordingly, Owners must defend MM Shivah, Manoj, Mona, and Choice Hotels. Owners need not defend MM Vaibhavlaxmi, LLC, CI Hotels LLC, or WS Hotels LLC.

SO ORDERED. This 4 day of March, 2022.

JAMES C. DEVER III
United States District Judge

24